IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                                                   Case No. 2:21-cr-20077-JTF

**MACK MATTHEWS,**

        **Defendant.**

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Mack Matthews' Motion to Suppress. (Docket Entry ("D.E.") #29). The instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #30). The Magistrate Judge held an evidentiary hearing on November 8, 2021. For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Suppress be DENIED.

**I.     Introduction**

On April 29, 2021, a grand jury of this Court returned a one-count Indictment against Defendant. (D.E. #1). The Indictment charges that, on or about May 13, 2020, Defendant violated 18 United States Code Section 922(g)(1) by knowingly possessing a Hi-Point .40 caliber pistol after having previously been convicted of a felony.

1

On September 17, 2021, Defendant filed the instant motion. Defendant argues that the warrantless search of his person following a traffic stop amounted to a violation of the Fourth Amendment. Defendant further argues that no exceptions to the warrant requirement permitted such an intrusion and that all evidence obtained as a result of the unconstitutional search should be suppressed. On October 1, 2021, the Government filed its Response (D.E. #31), which asserts that Defendant was subjected to a lawful pat-down pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968) and that, even if the pat-down were unconstitutionally performed, the firearm recovered from his person would inevitably been discovered in a search incident to his arrest for driving under the influence.

## II.   Proposed Findings of Fact

In the early morning hours of May 13, 2020, State Trooper Rico Mazique ("Trooper Mazique") of the Tennessee Highway Patrol ("THP") was on patrol near the intersection of Highway 64 and Interstate 40 ("I-40"). Trooper Mazique's patrol car was outfitted with a dash camera. (Hearing Exhibit #2 ("Dash Video")).[1] [2]

---

[1] At the time of this traffic stop, Trooper Mazique had not yet been issued a body camera. He was wearing a body microphone during the encounter, but it had "audio issues" and did not clearly record the events.

[2] Trooper Mazique testified about the following segments of the Dash Video; his testimony will be further summarized herein—00:00-2:45 (Trooper Mazique on routine patrol); 02:45-4:50 (Trooper Mazique driving on Highway 64, entering I-40, observing a truck exit the roadway, and stopping his vehicle to offer assistance); 4:50-5:42 (Defendant examining his Vehicle, and Trooper Mazique asking questions to begin a basic crash investigation); 5:42-6:30 (Trooper Mazique and Defendant examining the Vehicle, and Trooper Mazique inquiring about his registration and insurance information); 6:30-7:36 (Defendant providing the requested documents); 7:36-8:08 (Trooper Mazique noticing an odor he believes to be an intoxicant, observing that Defendant's eyes are red and watery, and beginning to suspect that Defendant is occupying the Vehicle under the influence); 8:08-8:46 (Trooper Mazique moving Defendant away from a white line on the roadway for safety); 8:46-11:37 (Trooper Mazique beginning his inquiry about the odor of an intoxicant, Trooper Mazique moving his vehicle to allow traffic to pass and requesting assistance from a Shelby County deputy for safety reasons, and Defendant attempting to remove his car from the ditch); 11:37-12:06 (Trooper Mazique requesting Defendant's consent to perform standard field sobriety tests); 12:06-13:04

On that morning, the roadway was wet due to rain earlier in the day. As Trooper Mazique was about to proceed onto the entrance ramp from Highway 64 to I-40, he observed a black Dodge Ram (the "Vehicle") that had run off the roadway to the right and into a ditch. Trooper Mazique stopped to provide assistance and, if necessary, medical attention to the occupant of the Vehicle. As Trooper Mazique approached the Vehicle, a man later identified as Defendant was standing outside of the Vehicle looking at it. Defendant advised that he was not injured.

Trooper Mazique began a "basic crash investigation" by checking for damage to the Vehicle and asking Defendant what may have caused him to run off the roadway. Trooper Mazique did not observe any damage to the Vehicle; however, the Vehicle was stuck in the ditch. Trooper Mazique requested Defendant's driver's license, vehicle registration, and insurance information. Trooper Mazique recalled that Defendant provided his driver's license and vehicle registration and that there were "no problems" with those.[3]

As Trooper Mazique continued speaking with Defendant, he began to smell what he believed to be an intoxicant on Defendant's breath and person. Trooper Mazique also observed that Defendant's eyes were red and watery. Based upon these observations, Trooper Mazique suspected that Defendant had been occupying the Vehicle under the influence.

Trooper Mazique then proceeded to ask Defendant about the odor of an intoxicant and about whether he had had anything to drink that night. Defendant responded that he had drunk

---

(Trooper Mazique inquiring whether he had any dangerous items on his person before performing a pat-down); 13:04-15:20 (Defendant moving his arms, firearm falling from his waistband, Trooper Mazique kicking the firearm away); 15:20-17:07 (Trooper Mazique recovering firearm); 17:07 (Trooper Mazique beginning to secure the firearm and preparing to transport Defendant to another location to perform field sobriety tests).

[3] Trooper Mazique testified that, while he did obtain Defendant's driving record at the scene, he did not obtain any criminal history information before he was transported.

two beers a few hours prior. Trooper Mazique determined that a standard field sobriety test—which consists of "horizontal gaze nystagmus, walk and turn and one leg stand"—should be conducted.

Trooper Mazique moved his patrol car "over to the shoulder as much as possible" to prepare to conduct the horizontal gaze and nystagmus test, which he intended to do at the scene.[4] He also requested that a Shelby County deputy respond to his location to provide "more visibility" around the dark curve. Trooper Mazique kept his blue lights on but turned off his front lights because the "strobe light may cause involuntary jerking of the eye," which would affect the results of the horizontal gaze and nystagmus test. Trooper Mazique informed Defendant of his suspicions and asked him whether he would consent to the field sobriety tests. Defendant consented to undergoing these tests. Trooper Mazique then began to position himself in front of the dash camera to record the interaction from his point of view.

Before beginning the horizontal gaze nystagmus test, Trooper Mazique notified Defendant that he "wanted to perform a pat down frisk for any weapons or harmful materials" for reasons of officer safety. Defendant consented to the pat-down. Trooper Mazique stated that the particular safety concern when performing a field sobriety test is that the individual may become "very aggravated" or "disappointed" during it and that he needs to ensure that the individual "doesn't lash out and try to cause harm to the officer involving any physical, hand to hand combat or any weapons that he may have on his person." Although he believed that a pat-down was necessary

---

[4] Trooper Mazique did not intend to perform the walk-and-turn test or the one-leg stand at the scene because it was "not in a well lit area going around a curve" and he didn't want Defendant to "stumble and fall out into traffic and get hit by a vehicle passing." In fact, Trooper Mazique had already found it necessary to move Defendant away from the white line due to his concerns about the dangers of the area in which they were stopped.

as a preventative measure, Trooper Mazique had no specific reason to suspect that Defendant had a weapon or presented any danger at this time.

Before beginning the pat-down, Trooper Mazique asked Defendant if he had anything in his pockets that may "poke" or "stick" him, and Defendant removed several items. Trooper Mazique then asked Defendant to remove his hands from his pockets so he could see them while he performed the pat-down. Defendant complied with Trooper Mazique's requests "for the most part" but, as Trooper Mazique was about to pat down his waistline, Defendant "began to reach back and move his arms" in an "erratic[]" and "aggressive manner." Although Defendant did not try to strike Trooper Mazique, Defendant's actions concerned him, and he instructed Defendant to "calm down." Trooper Mazique also tried to "guide" Defendant's arm back up to the vehicle multiple times.

As he continued the pat down, Trooper Mazique felt what he believed to be a handgun in his waistline, which then "dropped down his pants leg" onto the ground. Once it hit the ground, Trooper Mazique observed that it was a firearm and kicked it into the grassy median to move it away from him and Defendant. Trooper Mazique also directed Defendant to place his hands back on his patrol car.

Trooper Mazique placed Defendant in the back of his patrol car to "distance him away from that firearm."[5] He recovered the firearm from the grassy median, unloaded it, and placed it in an evidence bag. He returned to his patrol car and informed Defendant that he would be

---

[5] Trooper Mazique testified that, even if he had not already done a pat-down for officer safety at that time, he would have done one before placing Defendant in his patrol car for the same reason.

transporting him to a safer location to perform the standardized field sobriety testing. He then proceeded to a Shell gas station at the intersection of Highway 64 and Germantown Parkway.

Trooper Mazique performed all three field sobriety tests at that time, and Defendant "displayed indications of impairment." He also performed a portable breath test to provide further confirmation of his observations from the prior three tests, and it indicated that Defendant failed. Defendant was then placed under arrest and advised of his *Miranda* rights. Defendant's blood was drawn at 2:45 a.m. It reflected that his blood-alcohol content was .10, which is above the legal limit. Trooper Mazique prepared the affidavit of complaint before booking Defendant into the Shelby County Detention Center. (Mot. to Suppress Exh. 1). Defendant was later charged with various offenses under Tennessee law. (*Id*.)

Trooper Mazique further testified about his training and about THP's policies, procedures, and orders for performing a vehicle accident investigation and an investigation when driving under the influence ("DUI") is suspected. Trooper Mazique was trained how to perform these investigations at the THP training academy and was aware that the applicable policy in place was General Order 300. (Hearing Exhibit #3).[6] General Order 300 does not require a person to be patted down on a DUI stop; however, it does state that the safety of the officer should never be jeopardized and that he should always use appropriate safety measures when approaching an individual. Trooper Mazique was also taught at the THP training academy that he should pat down an individual before placing him in the back of a patrol car.

---

[6] General Order 300 was discussed at the evidentiary hearing but was not introduced as an exhibit at that time. Defendant's counsel requested that the record be supplemented following the evidentiary hearing to include it, and it was provided to the Magistrate Judge by e-mail. At that time, it was designated as Exhibit 3.

### III.     Proposed Analysis

Under the Fourth Amendment, there are three types of permissible encounters between the police and citizens: consensual encounters, investigative detentions, and arrests. *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000) (internal citations omitted). A consensual encounter can be initiated by a law enforcement officer without any objective level of suspicion of involvement in criminal activity. *Id.* During a consensual encounter, law enforcement officers may approach an individual and ask general questions so long as they refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave. *Id.* Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity. *Id.* Because if a person who voluntarily speaks with an officer during a consensual encounter is free to disengage at any time, the person is not seized for Fourth Amendment purposes. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

The second type of police-citizen encounter is the more-intrusive investigative detention or *Terry* stop, which must be supported by a reasonable, articulable, and objective suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997). "A reasonable suspicion exists when, based on the totality of the circumstances, a police officer has a particularized and objective basis for suspecting that the particular particular person . . . of criminal activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (citations and internal quotation marks omitted). A mere hunch is insufficient to justify an investigative detention. *Id*.

During an investigative detention, an officer may perform a pat-down if one of two criteria

7

is met: (1) he "has reason to believe that he is dealing with an armed and dangerous individual," *Terry*, 392 U.S. at 27; or, (2) the individual voluntarily provides his consent, *United States v. Winfrey*, 915 F.2d 212, 218 (6th Cir. 1990) (citing *United States v. Mendenhall,* 446 U.S. 544, 558 (1980)).

The third type of police-citizen encounter is an arrest. A warrantless arrest is reasonable under the Fourth Amendment if an officer has probable cause to believe that a crime has been, is, or is about to be committed. *United States v. Place*, 462 U.S. 696, 702 (1983); *United States v. Watson*, 423 U.S. 411, 417 (1976).

Upon review, the undisputed evidence demonstrates that Trooper Mazique did not initiate a traffic stop but instead approached Defendant after his Vehicle ran off the road. Trooper Mazique did so to provide any necessary assistance and to perform a basic crash investigation. After approximately five minutes of examining the vehicle and checking the required documentation, Trooper Mazique noticed the smell of what he believed to be an intoxicant on Defendant's breath and person and observed Defendant's eyes as being red and watery. Defendant was detained at this time due to Trooper Mazique's suspicion that he was driving under the influence of alcohol in violation of Tennessee law—a suspicion that the Court recommends was reasonable and articulable. Defendant was then asked to consent to the pat-down so that he may be transported to a safer location for the field-sobriety tests. Defendant provided his consent. Accordingly, it is recommended that none of Trooper Mazique's actions in detaining Defendant upon suspicion of driving under the influence or patting down Defendant based upon his consent ran afoul of the Fourth Amendment.

Furthermore, the inevitable-discovery exception to the warrant requirement applies when

the "government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *U.S. v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *Id.* at 498 (citations and internal quotation marks omitted).

Here, Trooper Mazique had already determined that it was necessary to perform standardized field sobriety tests before he initiated the pat-down. Had he not performed the pat-down when he did, Defendant's field sobriety tests and subsequent portable breath test would have indicated that he was intoxicated. Trooper Mazique testified that, at that time, he would have placed Defendant under arrest for violating Tennessee law and that he would have searched Defendant's person incident to arrest. Therefore, even if the pat-down performed in this case were unconstitutional, which it is recommended that it was not, the inevitable-discovery exception to the warrant requirement would apply such that the recovery of the firearm was constitutionally permissible nonetheless.[7]

---

[7] Defendant's Motion to Suppress additionally argues any evidence obtained during the course of the investigation—including any statement that may have been given—should be suppressed as fruit of the poisonous tree pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963). As it has been recommended herein that no constitutional violation occurred, it is further recommended that no evidence should be suppressed pursuant to that doctrine.

## IV.     Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Suppress be DENIED.

**DATED** this 8th day of December , 2021.

                                            s/ Charmiane G. Claxton
                                            CHARMIANE G. CLAXTON
                                            UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).   FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**